UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
JEFFREY THIGPEN,                           :
                                           :        **REPORT AND**
                        Petitioner,        :        **RECOMMENDATION**
                                           :
        – v –                              :        06-CV-3110 (NG) (VVP)
                                           :
WILLIAM BROWN, Superintendent of           :
Eastern Correctional Facility,                                    :
                                           :
                        Respondent.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

POHORELSKY, Magistrate Judge:

        Judge Nina Gershon has referred to me for a Report and Recommendation, pursuant to 28

U.S.C § 636(b)(1), Jeffrey Thigpen's petition for a writ of habeas corpus, challenging his state

court conviction and sentence for the armed robbery of a Queens, New York liquor store.  The

claims asserted in his application relate to various grand jury, evidentiary, and sentencing errors,

as well as to the performance of trial and appellate counsel.  For the reasons discussed below, the

undersigned respectfully recommends that the instant petition be DENIED.

## BACKGROUND

        On March 29, 1996, a unanimous jury found the petitioner guilty of robbing a liquor

store owner at gunpoint.  Specifically, the jury convicted the petitioner of (1) robbery in the first

degree; (2) criminal possession of a weapon in the second degree; and (3) criminal possession of

stolen property in the fifth degree.  The petitioner was sentenced, as a persistent felony offender,

to concurrent prison terms of eighteen years to life on the robbery and weapons counts, and one

year on the stolen property count.  After bringing numerous unsuccessful state court motions to

challenge his conviction and sentence, the petitioner sought habeas relief from this court.[1]  To

the extent they are relevant in resolving the instant petition, the court sets forth the following

facts, adduced from transcripts of the petitioner's trial and related proceedings, and from various

submissions filed during state court proceedings and in this court.[2]

At approximately 3:00 in the afternoon on May 15, 1995, the petitioner entered Mr. Shyn

Chang's liquor store, located at 73-04 Northern Boulevard in Jackson Heights, and requested a

bottle of rum.  (Tr. 321, 323, 327.)  After discussing with Mr. Chang the type of rum petitioner

wanted to buy, he selected a 200 milligram bottle that cost $3.95.  (*Id.* 327-28.)  Mr. Chang

placed the rum in a brown paper bag and handed it to the petitioner.  (*Id.* 328, 358.)  The

petitioner inserted the bottle into a dark blue plastic bag, pulled out a black, semi-automatic

weapon, pointed it at Mr. Chang, and demanded that he empty the cash register.  (*Id.* 329-30,

361.)  Mr. Chang gave the petitioner at least $120.  (*Id.* 428.)  The petitioner continued to

demand money, but Mr. Chang indicated that the register was empty.  (*Id.* 330.)  Pressing his

gun against Mr. Chang's back, the petitioner then pushed Mr. Chang to the rear of the store and

into a bathroom.  (*Id.* 330-32.)

---

[1]Mr. Thigpen's habeas petition is brought against Mr. Brown, the Superintendent of the Eastern Correctional Facility, where Mr. Thigpen was held at the time of filing.  Mr. Thigpen has since been moved to the Woodbourne Correctional Facility in Woodbourne, New York.

[2]This report and recommendation draws on the transcript and minutes of Mr. Thigpen's trial ("Tr."), sentencing ("S."), voir dire ("VD."), pre-trial hearing of September 28, 1995 ("H1."), re-sentencing hearing on March 23, 2001 ("H2."), grand jury proceedings ("GJ."), his memorandum of law in support of his petition for a writ of habeas corpus (Dkt. Entry 1) ("Pet'r's Mem."), and the respondent's memorandum of law in opposition to the petition for a writ of habeas corpus (Dkt. Entries 9-7) ("Resp't's Mem.").  Unless otherwise indicated, all exhibits are to the respondent's declaration in opposition to petition for a writ of habeas corpus (Dkt. Entries 9-1 to 9-6).

Less than a minute later, after hearing the sound of the door bell signaling that the petitioner had left the store (*id.* 331-32), Mr. Chang escaped from the bathroom and ran out of the store in time to see the petitioner entering a car down the street. (*id.* 333.) Mr. Chang pointed at the petitioner and shouted that he had been robbed. (*Id.* 334.) John Warner, an off-duty officer who happened to be nearby, heard Mr. Chang's calls. After speaking with Mr. Chang and learning that the petitioner had a gun (*Id.* 334-36), Officer Warner began to follow the petitioner in his private vehicle, never losing sight of the petitioner's car. (*Id.* 567-68.) Mr. Chang returned to his store, where he wrote down the license plate number of the petitioner's car and called 911. (*Id.* 336.)

After a short while, the petitioner's car became involved in a minor traffic accident, and came to a stop. (*Id.* 564-69.) Officer Warner showed his badge, and told the petitioner to get out of his car. (*Id.* 571.) When the petitioner refused, Officer Warner forcibly removed him from the car. (*Id.*) As the petitioner was being removed, a gun fell out of the car to the ground, (*id.*), where it layed underneath the petitioner while he was handcuffed face down on the ground. (*Id.* 461, 491.) Police on the scene also recovered a bottle of rum in a brown paper bag and a dark blue plastic bag containing clothing from the car. (*Id.* 583.) Later that night, Mr. Chang identified the gun, the bottle of rum, the brown paper bag, and the dark blue plastic bag as the petitioner's. (*Id.* 357-58, 362, 366.)

The petitioner gave a verbal statement on the same night, written by Detective Thomas Durnin and signed by the petitioner, containing the following admissions. The petitioner had entered the liquor store, displayed a gun, and taken money that was given to him after which he fled the scene. (*Id.* 745.) He did not enter the store with the intent to rob it, however, and only

took out the gun when Mr. Chang began rushing him. (*Id.* 745-46.) He did not know how much money he took from the store, but he said that he had $680 of his own money with him at the time. (*Id.* 745) He kept the money because he needed a new apartment. (*Id.*) He was in a car accident while driving away from the store and was arrested while he was dealing with the other driver. (*Id.*) Upon his arrest, the police found the money and the gun, which he had found a week earlier in the park. (*Id.*)

At trial, however, the petitioner testified that on the day of the robbery he was driving through Queens looking for a Saab dealership when he was arrested. (*Id.* 687-88.) He denied ever having entered Mr. Chang's liquor store, committing the robbery, or even possessing a firearm. (*Id.* 692.) The petitioner testified that he did not consume alcoholic beverages, an assertion echoed by his friend, Jewel Smith, who testified on his behalf. (*Id.* 692, 729.) Ms. Smith also indicated that the petitioner was not having financial difficulties and that they had discussed going into business together. (*Id.* 729.)

After hearing the testimony of Mr. Chang, Officer Warner, Detective Durnin, Jewel Smith and the petitioner, a jury found the petitioner guilty of robbery in the first degree, criminal possession of a weapon in the second degree, and criminal possession of stolen property in the fifth degree. (*Id.* 918.) He was sentenced to concurrent terms of eighteen years to life on the robbery and weapons counts and one year on the stolen property count. The petitioner has since filed numerous motions challenging his sentence and conviction. He is currently serving his sentence at the Woodbourne Correctional Facility in Woodbourne, New York.

In the present petition, the petitioner purports to assert five claims. The court, however, construes the petition to assert the following seven claims: (1) ineffective assistance of trial

counsel; (2) *Batson* violations; (3) "hearsay" violations concerning a 911 call record; (4) illegal sentencing; (5) *Brady* violations arising from withheld evidence; (6) ineffective waiver of immunity and problems with his grand jury oath; and (7) ineffective assistance of appellate counsel.

## DISCUSSION

### I.  Standard of Review under AEDPA

The writ of habeas corpus is available to a "person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.§ 2254(a).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this petition since it was filed after the AEDPA was enacted.  *See Williams v. Taylor*, 529 U.S. 362, 402 (2000); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

Under the AEDPA, a writ of habeas corpus may be granted by a federal court to a state prisoner whose claims were adjudicated on the merits if the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A case which is "adjudicated on the merits" is "a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001).

The Supreme Court has held that, under 28 U.S.C. § 2254(d)(1), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. (O'Connor, J., concurring and writing for the majority in this part). Also, "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Moreover, a federal court cannot grant the writ simply because they believe a state court applied federal law incorrectly; the federal court must *also* find that the state court applied the federal law unreasonably. *Id.* at 411.

In order to grant the writ, "[s]ome increment of incorrectness beyond error is required." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). However, "the increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" *Id.* The "determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II.  Procedural Requirements

### A.  Timeliness

A person in custody pursuant to a state court judgment, like the petitioner, must file an application for a writ of habeas corpus within a one-year period of limitation. 28 U.S.C. § 2244(d)(1). The statutory period runs from the latest of

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A-D).

Here, the relevant triggering date is identified by subsection (A), which indicates that a judgment becomes final and the one-year limitations period begins after the ninety-day period during which petitioner could seek a writ of certiorari from the United States Supreme Court expires. *Cantres v. Walsh*, No. 01-CV-05541, 2003 WL 21040178, at *3 (E.D.N.Y May 8, 2003). However, "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" is not counted toward the calculation of the one-year limitations period. 28 U.S.C. § 2244(d)(2). "A matter is 'pending' from the time it is properly filed until the time it is finally disposed of and further appellate review is unavailable under applicable state procedures." *Harris v. Artus*, No. CV-06-1337, 2006 WL 3392437, *3 (E.D.N.Y. June 1, 2006) (citing *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)). Although Mr. Thigpen's conviction became "final" on August 11, 1999, 90 days after the New York Court of Appeals's denial of his application for leave to appeal the Appellate Division's denial of his direct appeal, the one-year period of

limitations for Mr. Thigpen to file his habeas corpus petition did not begin to run on that date because he filed a motion before the 90-day period expired which remains pending to this day.

The pending motion is the petitioner's first motion to set aside his sentence pursuant to N.Y. Crim. Proc. Law § 440.20, which was filed on June 8, 1999.[3] Although the Appellate Division's order denying the petitioner's motion was entered on March 23, 2001 (*see* Exh. K.), Mr. Thigpen claims he never received notice of the written decision or a copy of the order. (Pet'r's Mem. at 21). In addition, the respondent has not been able to find a copy of the Notice of Entry of the motion court's decision to support their assertion that a notice was served on the petitioner. (Resp't's Mem. at 15.) Under New York law, the tolling of the limitations period ends only after the petitioner is served with a copy of the order denying the motion by the prevailing party. *See Bennett*, 199 F.3d at 120. Since there is no evidence that the petitioner ever received a copy of the order, the statute of limitations for filing a habeas corpus petition remains tolled. The petitioner's 1999 motion is still "pending" under *Bennett,* and this petition is thus timely.

B. State Court Exhaustion

Habeas corpus relief cannot be granted by a federal court unless "the applicant has exhausted the remedies available in the courts of the State" for each of his claims. 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981). If a petition contains even a single unexhausted claim alongside exhausted claims in a habeas petition, it is considered a "mixed petition." *See Rose v. Lundy*,

---

[3]Please see the attached appendix for the complete post-conviction procedural history in the petitioner's case.

455 U.S. 509, 510 (1982). A "mixed petition" must be dismissed, even if some or all of the petitioner's claims have merit. *Id.* at 522.

Exhaustion "requires only that state prisoners give state courts a fair opportunity to act on their claims." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing 28 U.S.C. § 2254(c) (emphasis in original). Therefore, "an applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The Supreme Court has understood this to mean that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Exhaustion also requires that the federal claim be "fairly presented to the state courts." *Picard*, 404 U.S. at 275, such that the "the legal basis of the claim made in state court was the 'substantial equivalent' of that of the habeas claim." *Daye v. Att'y Gen. of New York*, 696 F.2d 186, 192 (2d Cir. 1982) (*en banc*) (citing *Picard*, 404 U.S. at 278) (citations omitted). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.*

In the present petition, the respondent concedes that four of the petitioner's claims – his ineffective assistance of appellate counsel, illegal sentencing, *Brady*, and grand jury claims – are exhausted. The petitioner has not, however, fully exhausted his *Batson*, hearsay or ineffective assistance of trial counsel claims. These claims were first brought in the petitioner's first motion to vacate the judgment of conviction. (*See* Exh. L (*citing* U.S. Const. Amends. VI, XIV).) Justice Buchter rejected these claims (Exh. M), and the petitioner did not seek leave to appeal his

9

decision.  He failed, therefore, to give the state courts "one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review

process."  *O'Sullivan*, 526 U.S. at 845.

The petitioner claims that he never sought leave to appeal only because he never received

a copy of the final order.  Justice Buchter issued an order on November 21, 2002, and the

respondent has submitted an affidavit of service of the notice to the facility where the petitioner

was then held, dated December 2, 2002.  (*See* Exh. N.)  The petitioner asserts, however, that the

notice served on him was unrelated to the order regarding his motion.  He has attached an exhibit

indicating that he was, indeed, served with a notice of an unrelated order by Justice Buchter

denying another defendant's motion.  (*See* Exh. 2 to Pet'r's Mem., attaching an order written by

Justice Buchter and envelope addressed to the petitioner with a stamp indicating the letter was

received on December 3, 2002).  The petitioner, having never received a notice of the order on

his first motion to vacate, never sought to appeal the order, rendering his *Batson*, "hearsay" and

ineffective assistance of trial counsel claims unexhausted.  Under New York law, which states

that an appeal by a defendant can be made "within thirty days after service upon the appellant of

a copy of the order sought to be appealed," N.Y. Crim. Proc. Law § 460.10(5)(a), these claims

are still "pending," meaning that the petitioner could still return to a New York state court to

exhaust them.

Nevertheless, a federal court can deny an application for a writ of habeas corpus "on the

merits, notwithstanding the failure of the applicant to exhaust the remedies available in the

courts of the State."  28 U.S.C. § 2254(b)(2).  Stated another way, a district court has the

authority to review the merits of a petition containing unexhausted claims if doing so will result

in a denial of that petition. While the Second Circuit has not yet established a standard for determining when unexhausted claims may be denied on the merits, there are two tests courts in this circuit have followed. *Brown v. New York State*, 374 F. Supp. 2d 314, 318 (W.D.N.Y. 2005). The majority of courts have used a "patently frivolous" standard, *Naranjo v. Filion*, No. 02-CIV-5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003); a minority deny unexhausted claims when "'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim'" *Hernandez v. Lord*, No. 00-CIV-2306, 2000 WL 1010975, at *4 n.8 (S.D.N.Y. Jul. 21, 2000) (citing and analyzing cases). As demonstrated below, the petitioner's *Batson*, "hearsay," and ineffective assistance of trial counsel claims do not survive either standard. This mixed petition, therefore, may be denied in its entirety.

     C. Procedural Bar

     A federal court cannot review a state prisoner's habeas petition if his claims were defaulted in state court pursuant to an adequate and independent state rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In the present case, several of the petitioner's claims were denied on the basis of state procedural grounds by state courts. The petitioner raised the ineffective assistance of trial counsel, *Batson*, "hearsay", and grand jury claims in his first motion to vacate the judgment of conviction. (*See* Exh. L.) Judge Buchter rejected each of these claims based on the state rule that they rested on facts reflected in the trial record, and as such should have been raised on a direct appeal. (Exh. M at 4.) The petitioner presented his *Brady* claim in his second motion to vacate the judgment of conviction.

This claim was also rejected as a matter of the trial record that should have been raised on direct appeal. (*See* Exh. NN.) The petitioner has not articulated any reason whatsoever for any of his defaults, nor has he made a showing of actual prejudice. The state's procedural bars are thus sufficient to preclude federal habeas review of the petitioner's ineffective assistance of trial counsel, *Batson*, hearsay, grand jury, and *Brady* claims.

Notwithstanding any procedural bars, a federal court may nevertheless consider defaulted claims in light of the following guideposts: (1) "whether the alleged procedural violation was actually relied on", and "whether perfect compliance with the state rule would have changed" the court's decision; (2) "whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented"; and (3) "whether petitioner had 'substantially complied' with the rule" and, therefore, "whether demanding perfect compliance with the rule would serve a legitimate governmental interest." *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (quoting *Lee v. Kemna*, 534 U.S. 362 (2002) (setting out what are known as "*Cotto* factors")). State procedural rules have been deemed insufficient to bar federal review of a claim if they are not strictly or regularly followed, *Barr v. City of Columbia*, 378 U.S. 146, 149 (1964), are novel and unforeseeable, *NAACP v. Alabama ex rel Patterson*, 356 U.S. 449, 457 (1958), if they allow noncompliance, *Sullivan v. Little Hunting Park, Inc.*, 397 U.S. 229, 233-34 (1969), or if they cause undue burdens on the assertion of federal rights, *see Douglas v. Alabama*, 380 U.S. 415, 422-23 (1965). *See generally* Kermit Roosevelt III, *Light From Dead Stars: The Procedural Adequate and Independent State Ground Reconsidered*, 103 Colum. L. Rev. 1888 (2003) (addressing origins of the doctrine).

The *Cotto* factors do not indicate that the court should consider the petitioner's defaulted claims here. First, for each claim, the court relied on the petitioner's default as the basis for rejecting these claims. Second, New York case law is clear that claims based on the trial record must be brought on direct appeal. *See People v. Mower*, 97 N.Y.2d 239 (2002). Third, the petitioner has not "substantially complied" with this rule because he did not attempt to raise any of these claims on direct appeal. The *Cotto* factors support the finding that the petitioner's claims are procedurally barred from review by this court. Moreover, as is discussed below, none of the petitioner's defaulted claims have merit, and as such he has not been prejudiced, as required by *Coleman*, by the state court's decisions. Therefore, five of the petitioner's claims – his ineffective assistance of trial counsel, *Batson*, "hearsay", grand jury, and *Brady* claims – are unexhausted but procedurally barred from federal review.

### III.  <u>The Petitioner's Claims</u>

The court construes the petition to assert the following seven claims: ineffective assistance of trial counsel; *Batson* violations; erroneous hearsay ruling respecting a 911 call record; illegal sentencing; *Brady* materials withheld; ineffective waiver of immunity; and ineffective assistance of appellate counsel. Notwithstanding that some of these claims are not cognizable, the court addresses the claims on their merits.

#### A.  <u>Ineffective Assistance of Trial Counsel</u>

In order to demonstrate ineffective assistance of counsel, a convicted defendant must establish (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A counsel's performance is deficient where "that counsel made errors so serious that counsel was

not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.  A petitioner is prejudiced where "the counsel's errors were so serious as to deprive the defendant of a fair trial." *Id*.  The prejudice standard is met where "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  In drawing that conclusion, the court must be "highly deferential" to counsel's decisions. *Id.* at 689.  In the present case, the petitioner contends that two of his lawyers, Ms. Leigh Bickelhaupt and Mr. Steven Goldenberg, were ineffective.  The petitioner was initially represented by Ms. Bickelhaupt, who was subsequently removed from the case.  Mr. Goldenberg was then assigned to represent the petitioner but was also removed due to a breakdown in communication.[4]

### 1. *Ms. Bickelhaupt*

The petitioner asserts that Ms. Bickelhaupt was ineffective because (1) she allowed him to be prosecuted on a defective indictment; (2) she failed to argue that his waiver of immunity was defective because he was not under oath during his grand jury proceedings; (3) she failed to challenge the prosecutor's interruption of the petitioner's testimony during his appearance before the grand jury; and (4) she requested an off-the-record sidebar during a pre-trial hearing to discuss a motion by the petitioner to "inspect and dismiss the indictment," thereby failing to create a record for appeal.  (Pet'r's Mem. at 2-3.)

The grand jury minutes provide no support for, and actually contradict, the petitioner's assertions regarding the facts underlying Ms. Bickelhaupt's allegedly inadequate performance. The grand jury minutes establish that the petitioner was properly sworn in and that he understood

---

[4]The petitioner refers to this attorney as "Steven Goldberg" (Pet'r's Mem. at 1),  as well as "Steven Goldbird" (*id.* at 8, 7, 4).  The correct spelling appears to be "Steven Goldenberg," as is reflected in the trial minutes for February 28, 1996.  (Tr. at 1-2.)

and signed a waiver of immunity.  (*See* Exh. B to Exh. GG at 23-24.)  The petitioner provides the court with no reason to find that his waiver of immunity was in any way defective.  *See also* Section III.F, *infra* (discussing in more detail the petitioner's waiver of immunity).  In addition, the grand jury minutes establish that the petitioner was given a full opportunity to testify.  Although he was once briefly interrupted by the prosecutor, the petitioner was otherwise allowed to testify freely; indeed, the prosecutor explicitly stated at one point, "I interrupted you earlier and I want to give you a full opportunity to say anything about this incident before I begin to ask you questions," to which the petitioner responded that he had completed his statement.  (Exh. D to Exh. FF at 34.)

Furthermore, although the minutes indicate that there was an off-the-record sidebar during a pretrial hearing, the petitioner's assertions that it related to a motion to dismiss the indictment is wholly unsupported.  The pretrial hearing was devoted to evidentiary issues having nothing to do with the validity of the indictment.  Specifically, as announced by the court, the proceeding was "a combination hearing, Mapp, Wade and Huntley."  (H1. at 3.)  The references to Mapp, Wade and Huntley identify the seminal Supreme Court and New York Court of Appeals cases concerning the inadmissibility of illegally seized evidence (*Mapp v. Ohio*, 367 U.S. 643 (1961)), the prerequisites for the admissibility of eyewitness identification testimony (*United States v Wade*, 388 U.S. 218 (1967)), and the standards for admissibility of confessions, *(People v Huntley*, 15 N.Y.2d 72 (1965)).  Immediately prior to the sidebar, counsel objected to the petitioner being the only black man in the courtroom because he would be prejudiced with respect to identifications, and the court ruled on the issue.  (H1. at 6.).  Nothing in the record

suggests that the sidebar that occurred immediately thereafter had anything to do with a motion to dismiss the indictment.  (*Id.*)

In short, the facts do not support a finding that Ms. Bickelhaupt should have raised challenges to the waiver of immunity or the petitioner's grand jury testimony, and her failure to do so is not evidence of her inadequacy.  The petitioner's claim that he was provided ineffective assistance by Ms. Bickelhaupt lacks merit.

### 2. *Mr. Goldenberg*

The petitioner also asserts that his subsequent assigned counsel, Mr. Goldenberg, precipitated a mistrial by sharing the petitioner's defense with the prosecution, which caused the court to bar 911 Sprint reports from coming into evidence and withdraw its grant of the petitioner's request for a handwriting expert.  The petitioner provides no support for any of these allegations either.  The relevant minutes indicate that a mistrial was declared on the first day of jury selection "as a result of a breakdown" in communication between the petitioner and Mr. Goldenberg.  (Tr. at 2.)  Mr. Goldenberg was thereafter removed from representing the petitioner, who was appointed new counsel, and granted a new trial.  (*Id.*)  There is no indication in the record that the "breakdown" in communication concerned any purported disclosure of the petitioner's defense to the prosecution, or that any such disclosure, if it occurred, impacted any of the court's evidentiary rulings in any way.  No evidentiary rulings of any kind were made at that time concerning the Sprint reports or handwriting expert, or anything else for that matter. The new trial commenced more than a week later with new counsel.  (VD. at 1).

In any event, a finding of ineffective assistance of counsel "requires a remedy specifically tailored to the constitutional error . . . one that as much as possible restores the

defendant to the circumstances that would have existed had there been no constitutional error."

*United States v. Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000). Here, petitioner was granted a

mistrial and appointed new counsel by the trial court, and thereby placed in the position he was

in prior to Mr. Goldenberg's allegedly deficient representation. The petitioner does not allege

that the errors made by Mr. Goldenberg pervaded the petitioner's new trial. Any errors made by

Mr. Goldenberg were remedied, therefore, by the court's grant of a mistrial and appointment of

new counsel. Thus, in addition to being procedurally barred, the petitioner's claim lacks merit,

or, in the alternative, has already been remedied.

      B. *Batson* Violations

The petitioner asserts that he was denied equal protection of the law when he was tried

before a jury from which individuals were purposely excluded in violation of *Batson v.*

*Kentucky*, 476 U.S. 79 (1986). This claim is based on the fact that the prosecutor used

peremptory strikes on three prospective, and apparently African-American, jurors – Valerie

Lyons, Katherine Braton, and Violet Matanzo.[5] The petitioner argues that the court let the

challenges stand despite the prosecution's clearly pretextual reasons for striking these jurors.

The record discloses, however, that the court's application of *Batson v. Kentucky* and its

acceptance of the prosecution's race-neutral reasons were not contrary to, or an unreasonable

application of, constitutional law.

Under *Batson v. Kentucky,* the objecting party first bears the burden of making a *prima*

*facie* showing that the peremptory challenges were made with an intent to discriminate. 476

---

[5]It remains unclear whether Ms. Matanzo was African-American. While discussing it, Judge
Appelman stated, "I'm not sure . . . I thought possibly." (VD. 61.)

U.S. at 93-97. In the second step, "the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." *Id.* "The second step . . . does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995). All that is required is that there be no discriminatory intent in the prosecutor's explanation. In the third and final step of the analysis, the objecting party must show that the prosecutor's reasoning was simply pretext for discrimination. In other words, "the trial court ha[s] the duty to determine if the defendant has established purposeful discrimination." *Batson*, 476 U.S. at 98. If the court finds that they had not, the challenges will stand.

In the present case, the court *sua sponte* took exception to the prosecution's strikes because the judge believed there was a *prima facie* basis for finding that the prosecution intended to discriminate. In response, the prosecution advanced three race-neutral explanations for the strikes: Ms. Lyons was stricken due to her profession, Ms. Braton due to her combative nature, and Ms. Matanzo due to an unreasonable answer to a question. The court proceeded to the third step, finding no discriminatory intent in any of the above reasons, and ultimately concluded that the prosecutor's strikes were not motivated by purposeful discrimination. The state court's acceptance of the prosecution's race-neutral reasons was not contrary to nor an unreasonable application of *Batson v. Kentucky*.

The petitioner continues to assert that the prosecution's reasons were pretextual. (Pet'r's Mem. at 15.) Strikes based on a prospective juror's profession, like the one used against Ms. Lyons, are acceptable. *See United States v. Alvarado*, 951 F.2d 22, 25 (2d Cir. 1991) (upholding denial of *Batson* challenge on basis of prospective juror's employment as a social worker); *United States v. Maxwell*, 473 F.3d 868, 872 (8th Cir. 2007) (upholding denial of *Batson*

18

challenge because prospective juror was a teacher and as such may be more sympathetic towards defendant).  The reasoning used to justify the striking of Ms. Braton has also been accepted: "an impression of the conduct and demeanor of a prospective juror during the *voire dire* may provide a legitimate basis for the exercise of a peremptory challenge."  *Brown v. Kelly*, 973 F.2d 116, 121 (2d Cir. 1992); *see also Green v. Travis*, 414 F.3d 288, 300 (2d Cir. 2005) (holding "the unfavorable demeanor of a venireperson has been held to be a race-neutral explanation for a peremptory challenge.")  Finally, Ms. Mantazo was dismissed because she provided an unreasonable answer to a question asked by the defense – clearly a race-neutral explanation. Moreover, her race was never conclusively determined by the court.  The petitioner's procedurally barred claim based on violations under *Batson v. Kentucky* is also meritless.

C.  Claims Concerning 911 Call Record

The petitioner claims that he was prejudiced during his trial because a tape of Mr. Chang's 911 call, placed immediately following the robbery, was never turned over to him, in violation of *People v. Rosario*, 9 N.Y.S.2d 286 (1961).[6]  He believes that this tape would have shown that Mr. Chang's description of his assailant did not match the petitioner.  The petitioner also claims that the Sprint report of his 911 call, provided to him before his trial began, was improperly excluded from evidence following Mr. Goldenberg's removal, which was in part the basis for the petitioner's ineffective assistance of counsel claim.  A copy of the Sprint report was provided to the petitioner on September 28, 1995, before his trial began (Exh. C to Pet'r's Mem.

---

[6]Neither the 911 tape nor the Sprint report were included in the record, making it impossible for the court to reconstruct their content or assess their potential impact.  There is no indication, however, that the contents were in any way exculpatory.

at 3-5), but was excluded from evidence at trial because, the petitioner contends, Mr. Goldenberg communicated with the prosecutor about the petitioner's defenses.

1. *Missing 911 Tape*

With respect to the missing 911 tape, the trial court considered the fact that the prosecution failed to produce the 911 tape, and by way of a remedy, delivered an adverse inference charge. In any event, the petitioner's claim, based on a violation of his rights under *Rosario*, is not cognizable on federal habeas review. The writ is only available for review of violation of federal law. "Any error under *Rosario* at trial would be a violation of state law, and, thus, not subject to review under a petition for a writ of habeas corpus." *Morrison v. McClellan*, 903 F. Supp. 428, 429 (E.D.N.Y. 1995); *see also United States ex rel. Butler v. Schubin*, 376 F.Supp. 1241, 1247 (S.D.N.Y. 1974), *aff'd*, 508 F.2d 837 (2d Cir. 1975).

2. *Exclusion of Sprint Report from Evidence*

The petitioner also claims that the exclusion of the Sprint report from evidence, viewed in conjunction with the absence of the 911 tape, prejudiced him. However, a state's evidentiary rulings rarely rise to the level necessary to grant habeas relief. "Generally, erroneous evidentiary rulings of a state trial court do not rise to the level of a constitutional deprivation upon which a writ of habeas corpus may be issued." *Jenkins v. Bera*, 663 F. Supp. 891, 899 (E.D.N.Y. 1987). In fact, "in order to prevail on a claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial." *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985).

In this case, any evidentiary error made by the state court did not deny the petitioner a "fundamentally fair trial." The petitioner's claim that he was prejudiced by the missing 911 tape

and the exclusion of the Sprint report is defeated both by the record and by his own admissions. There was clear and convincing evidence that the petitioner robbed Mr. Chang at gunpoint. Mr. Chang pointed out the petitioner to an off-duty police officer who followed him through the streets of Queens, never losing sight of him, until the petitioner was involved in a car accident. The officer placed the petitioner under arrest and as he was removed from his car, a gun fell to the ground. Later that night, Mr. Chang identified the petitioner as the man who robbed him and the petitioner made a statement admitting that he displayed the gun and robbed the liquor store. The petitioner was convicted on the basis of overwhelming evidence, and there is no evidence that the missing 911 call would be exculpatory. The petitioner's *Rosario* claims arising from the absence of the 911 tape and the exclusion of the Sprint report are procedurally barred, not cognizable, and without merit, and therefore are properly denied.

D. Illegal Sentencing

On March 23, 2001, Judge Barry Kron held a persistent violent felony offender hearing stemming from the petitioner's first motion to set aside his sentence. (Exh. J at 3.) During the hearing, the petitioner challenged the constitutionality of his predicate convictions. Justice Kron suggested that the petitioner's attorney, Mr. Francis Ganun, order the minutes of the petitioner's two predicate convictions and resubmit the motion to set aside the sentence if he could show that the petitioner's prior convictions were unconstitutionally obtained. (Exh. K.). The petitioner asserts that he had obtained the proof necessary to meet his burden but the court refused to continue his persistent violent felony offender hearing, thereby violating his due process and equal protection rights. (Pet'r's Mem. at 20.) He also contends that Justice Kron decided not to continue the hearing on the erroneous ground that ineffectiveness of counsel does not render a

conviction unconstitutional. (*Id.*) In sum, the petitioner asserts that he was sentenced as a persistent violent felon in violation of his right to challenge the constitutionality of his predicate felony convictions. (*Id.* at 20-22.)

The petitioner's claims, however, are belied by the record, which indicates that he was given the opportunity to challenge the predicate convictions. Per Justice Kron's suggestion, the petitioner submitted a second motion to set aside his sentence. (Exh. O.) Justice Kron reviewed this motion and rejected it because the prior convictions were not unconstitutional. (Exh. Q at 2.) This eliminated the need to continue the petitioner's hearing. Judge Kron never stated that ineffectiveness of counsel cannot be used to show an unconstitutional conviction. Instead, the judge stated that the *unsupported* claims of ineffectiveness of counsel do not meet the burden of proof necessary to have the petitioner's convictions overturned. (*Id.*)

To the extent that the petitioner's claim attempts to challenge the actual sentence he received, it also fails. The petitioner's sentence as a persistent violent felon was properly determined. Under New York law, "a persistent violent felony offender is a person who stands convicted of a violent felony offense . . . after having previously been subjected to two or more predicate violent felony convictions." N.Y. Penal Law § 70.08(1)(a). The petitioner had been previously convicted of two violent felony convictions. In 1981, the petitioner was found guilty of two counts of first-degree robbery, and one count of second-degree robbery; in 1989, the petitioner pled guilty to four counts of first-degree robbery. (Exh. P at 8.) To qualify as a predicate offense, "[t]he conviction must have been in this state of a class A felony . . . or of a violent felony offense as defined in subdivision one of section 70.02." N.Y. Penal Law § 70.04(1)(b)(i). Both convictions qualify as predicate offenses, because each is based on offenses

found in subdivision one of section 70.02.  *See* N.Y. Penal Law § 70.02(1)(a)-(b).  The petitioner's conviction for robbing Mr. Chang's liquor store, his third conviction for a violent felony offense, subjected him to sentencing as a mandatory persistent violent offender.  *See* N.Y. Penal Law § 70.02(1)(a) (setting out robbery in the first degree, the offense for which the petitioner was convicted, as a violent felony offense.)  In light of these three convictions, the court was obliged to impose a mandatory "indeterminate sentence of imprisonment, the maximum term of which shall be life imprisonment."  *Id.* § 70.08(2) (emphasis added).

Accordingly, the petitioner was sentenced to 18 years to life in prison for his third violent felony offense, which fell within the sentencing guidelines.  (Although today's New York sentencing guidelines for robbery in the first degree suggest a prison term of between 20 years and life in prison, *see* N.Y. Penal Law § 70.08(2)-(3)(a-1), at the time of the petitioner's sentencing, it was between 10 years and life.  (S. 11.))  When a sentence imposed is within the range prescribed by law, "a claim of excessive punishment does not present a constitutional question necessary for habeas corpus reversal."  *Underwood v. Kelly*, 692 F. Supp. 146, 152 (E.D.N.Y. 1988); *see also Briecke v. State of New York*, 936 F. Supp. 78, 85 (E.D.N.Y. 1996) (holding "a sentence imposed by a state court that is within the range authorized by the state legislature is not grounds for relief in federal habeas corpus review").  It should also be noted that the petitioner's sentence is not prohibited by the Eighth Amendment's ban on cruel and unusual punishment.  The Eighth Amendment does not require strict proportionality between crime and sentence; the sentence simply cannot be extreme compared to suggested guidelines.  *See McKenzie v. Poole*, No. 03-CV-4253, 2004 WL 2671630 at *10 (E.D.N.Y. Nov. 23, 2004)

(holding that New York's persistent violent felony offender sentencing is not excessive under the Eighth Amendment). The petitioner's illegal sentencing claim lacks any merit.

E. *Brady* Violation

The petitioner claims that his due process right was violated because the prosecution did not turn over three pages of grand jury minutes concerning his waiver of immunity. The Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In this case, it is clear that the minutes withheld from the petitioner were not "material either to his guilt or punishment." *Id.* The relevant minutes concerned his signing of a waiver of immunity. (Pet'r's Mem. at 23.) These minutes pertain to grand jury proceedings that are unrelated to whether the petitioner was guilty of the crimes he was charged with, or to his sentence. The grand jury minutes which were withheld do not qualify as *Brady* material. The petitioner's *Brady* claim, therefore, is meritless.

F. Grand Jury Claims

The petitioner asserts that the grand jury proceedings against him were defective in two ways: First, his waiver of immunity was ineffective because he signed it outside the grand jury room, prior to swearing that he had read and signed it before the grand jury, and second, he was not placed under oath at his grand jury hearing as a witness. (Pet'r's Mem. at 31-33.) The petitioner's grand jury claims are not cognizable on federal habeas review. "The sufficiency of an indictment cannot be reviewed in habeas corpus proceedings." *Knewel v. Egan*, 268 U.S. 442, 446 (1925). This is because "the crime charged was within the state court's jurisdiction." *United States ex rel. Tangredi v. Wallack*, 343 F.2d 752, 752 (2d Cir. 1965). Furthermore, any

problem with the indictment was cured upon petitioner's conviction.  *See United States v. Mechanik*, 475 U.S. 66, 73 (1986) (finding that the "jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation.").  In any event, the petitioner's grand jury claims are without merit.

Under New York law, "[a] waiver of immunity is not effective unless and until it is sworn to before the grand jury conducting the proceeding in which the subscriber has been called as a witness."  N.Y. Crim. Proc. Law § 190.45(2).  The grand jury minutes indicate that the petitioner had the opportunity to consult with his lawyer about the waiver prior to signing it, that he then read, understood, and signed the waiver outside the grand jury room, and that he then swore to those facts before the grand jury.  (*See* Exh. B to Exh. GG. at 22-24.)  His waiver, thus signed and sworn to, conformed to the legal requirements for an effective waiver under New York law.  *See*, *e.g.*, *People v. Cole*, 601 N.Y.S.2d 352, 354 (N.Y. App. Div. 1993) (statutory requirement that a waiver of immunity must be sworn to before a grand jury was satisfied when defendant, under oath, acknowledged his signature on a written waiver introduced in evidence); *People v. Allen*, 558 N.Y.S.2d 121, 397-398 (N.Y. App. Div. 1990) (statutory requirement satisfied where the defendant swore that it was his signature which appeared on the written waiver introduced at grand jury proceedings); *People v. Hodge*, 530 N.Y.S.2d 184, 186 (N.Y. App. Div. 1988) (immunity waived where defendant swore before grand jury that signature on written waiver his own); *cf. People v. Higley*, 70 N.Y.2d 624, 626 (N.Y. 1987) (immunity was not waived where defendant never swore to his waiver of immunity before grand jury.)  The transcript of the grand jury proceedings also confirms that the oath of a witness was properly

administered to the petitioner.  (Exh B. to Exh. GG. at 24.)  The petitioner's grand jury claims lack merit.

> G.     Ineffective Assistance of Appellate Counsel

The petitioner argues that his appellate counsel, Ms. De Nice Powell, provided him with ineffective assistance because she raised meritless claims on appeal instead of meritorious issues. (Pet'r's Mem. at 8.)  The petitioner contends that Ms. Powell should have raised the following claims: (1) the petitioner was denied his right to effective trial counsel; (2) he was denied his right to challenge his prior convictions and his sentence was therefore determined improperly; (3) his indictment was defective; (4) he was prejudiced when the trial court refused to put a sidebar on the record; and (5) the prosecutor committed clear *Batson* violations.  (Pet'r's Mem. at 5, 8.)  The petitioner offers his later success on a motion for re-sentencing as an indication that his appellate counsel was inadequate.  (*Id.* at 5.)  The petitioner also claims that Ms. Powell failed to order all of the minutes concerning his case.  (*Id.*)

"Although the *Strickland* test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  It is not necessary for appellate counsel to raise every claim that could be considered nonfrivolous, but a petitioner can demonstrate ineffective assistance "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  *Id.*  However, appellate counsel "is entitled to focus on key issues while winnowing out weaker arguments," and "reviewing courts should not second-guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues."  *Avincola v. Stinson*, 60 F. Supp. 2d 133, 148 (S.D.N.Y. 1999).

In the present case, it is clear that Ms. Powell presented the petitioner's best arguments. As detailed above, each of the claims the petitioner believes Ms. Powell should have raised during his appeal have been deemed meritless by the state courts as well as in this report. As such, Ms. Powell's decision not to present those claims cannot be considered to be ineffective assistance. *See Rolling v. Fischer*, 433 F. Supp. 2d 336, 351 (S.D.N.Y. 2006). Thus, the petitioner's claim lacks merit. Furthermore, there is no basis upon which to find that the denial of the petitioner's ineffective assistance of appellate counsel claim was "contrary to or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).

## CONCLUSION

For the foregoing reasons, I recommend that the instant petition for a writ of habeas corpus be denied .

\*            \*            \*            \*            \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g.*, *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825

(1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*).

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
 September 26, 2008

# APPENDIX: PROCEDURAL HISTORY

Due to its length and complexity, the petitioner's relevant post conviction procedural history has been placed in this appendix.

A. <u>Direct Appeal</u>

In October, 1997, the petitioner filed his direct appeal from a judgment entered on April 15, 1996, arguing that (1) he was denied his constitutional right to confront witnesses against him when the court denied his request to recall the complainant after receiving prior testimony that was inconsistent with complainant's trial statements; (2) he was denied the right to a fair trial when the court refused to declare a mistrial or give a curative instruction when the complainant testified about a suppressed pre-trial identification; (3) he was denied his right to a fair trial when the court failed to provide the deliberating jury with requested testimonial readbacks; and (4) he was denied his right to a fair trial when the court refused to charge the jury that it must determine whether the prosecution proved, beyond a reasonable doubt, that the appellant actually made a written statement before considering its substance. (Exh. A.) The People filed an opposing brief on December 5, 1997. (Exh. B.) On December 28, 1998, the appellate court affirmed the judgment, finding that "the trial court did not improvidently exercise its discretion in denying the defendant's request to recall the complainant for cross-examination." *People v. Thigpen*, 682 N.Y.S.2d 882 (App. Div. 1998). The petitioner's remaining contentions were held to be unpreserved for appellate review or meritless. *Id.*

On January 15, 1999, the petitioner sought leave to appeal to the Court of Appeals. (Exhs. D and E.) On March 11, 1999, the People submitted a letter in opposition to the

petitioner's application for leave to appeal. (Exh. F.) The Court of Appeals denied the application on May 13, 1999. *People v. Thigpen*, 715 N.E.2d 516 (N.Y. 1999).

B.    The Petitioner's First Motion to Set Aside the Sentence
      Pursuant to New York Criminal Procedure Law §440.20

On June 8, 1999, the petitioner, acting *pro se*, moved the trial court to set aside his sentence on the grounds that he had not been given an opportunity to challenge the constitutionality of his predicate convictions at his sentencing. (Exh. H.) On August 1, 1999, the District Attorney did not oppose setting aside the petitioner's sentence pending a persistent violent felony offender hearing. (Exh. I.) On August 31, 1999, the Honorable Justice Barry Kron granted the motion and ordered that a persistent violent felony hearing be held after which the petitioner would be resentenced in accordance with findings made in that hearing. (Exh. J at 3.) Following a persistent violent felony hearing on March 23, 2001, the petitioner's motion to set aside his sentence was denied without prejudice and his original sentence was reinstated. (Exh. K.)

C.    The Petitioner's First Motion to Vacate the Judgment of
      Conviction Pursuant to N.Y. Crim. Proc. Law §440.10

On February 28, 2002, the petitioner, acting *pro se*, moved to vacate the judgment of conviction. (Exh. L.) The petitioner argued that: (1) his constitutional rights were violated because the waiver of immunity he had signed was defective and the prosecutor acted improperly in interrupting his testimony; (2) his right to a fair trial was violated because (i) a juror was improperly kept on the jury after being challenged, (ii) a prospective juror was improperly dismissed despite not being challenged, (iii) he was denied his full allotment of peremptory challenges and (iv) the prosecutor made challenges in violation of *Batson v.*

30

*Kentucky*; (3) he was deprived of his right to be present for a readback to the jury; (4) he was prejudiced when the property found in his car was improperly admitted as evidence at trial; (5) he was prejudiced by the People's failure to produce missing 911 tapes; (6) he received ineffective assistance of his trial counsel; and (7) his right to appeal was violated because minutes of some proceedings were not submitted to the Appellate Court.  (*Id.*)

On November 21, 2002, the Honorable Richard L. Buchter denied the petitioner's motion on the grounds that the petitioner's claims were barred as he had failed to raise them on direct appeal and because they were unsupported by any evidence.  (Exh. M (citing N.Y. Crim. Proc. Law §§ 440.10(2)(c) and 440.30(4)(d)).)  The court also rejected the claim of ineffective counsel because it was supported only by the petitioner's own conclusory statements.  (*Id.* (citing N.Y. Crim. Proc. Law § 440.30(4)(d)).)  The petitioner did not appeal this decision.

D.  The Petitioner's Second Motion to Set Aside the Sentence

On April 2, 2003, the petitioner, acting *pro se*, filed a second motion to set aside his sentence.  (Exh. O.)  He argued that he was ineffectively assisted by his counsel during his two previous convictions, in 1981 and 1989, in that they did not advise him of his right to controvert the predicate felony statements.  The District Attorney filed an affidavit in opposition to the petitioner's motion.  (Exh. P.)  The petitioner's motion was denied by Justice Kron on October 30, 2003.  (Exh. Q.)  Justice Kron stated that the petitioner's motion did not raise an issue of fact in regards to the constitutionality of his predicate convictions.  (*Id.* at 2)  Furthermore, the petitioner's claims were conclusory and unsupported by any evidence.  (*Id.*)  Finally, the court found that petitioner's claims were contradicted by the sentencing minutes of his prior convictions.  *Id.*

The petitioner then sought leave to appeal the denial of his motion to the Appellate Division. (Exh. R.) The District Attorney filed an affirmation in opposition to the petitioner's request. (Exh. S.) On August 19, 2004, the Appellate Division denied the petitioner's application for leave to appeal. (Exh. T.)

E.  The Petitioner's Motion for a Writ of Error Coram Nobis

On May 18, 2004, the petitioner, acting *pro se*, filed a motion for a writ of error *coram nobis* in the Appellate Division. (Exh. U.) The petitioner argued that his appellate counsel was ineffective because she failed to argue that: (1) the trial court lacked subject matter jurisdiction over the petitioner because his indictment was defective because his waiver of immunity was ineffective; (2) the grand jury was compromised by the prosecutor's actions; (3) the court incorrectly refused to put the petitioner's motion to dismiss the indictment on the record; (4) his right to a fair trial was violated due to errors during the jury selection process; (5) the prosecutor committed a *Batson* violation during jury selection; and (6) he was denied the right to counsel and to challenge the constitutionality of his prior convictions at sentencing. (*Id.*) The petitioner's appellate attorney filed an affirmation in response to the motion. (Exh. V.) The District Attorney filed an affirmation in opposition to the motion. (Exh. W.)

On October 12, 2004, the Appellate Division denied the petitioner's motion summarily. *People v. Thigpen*, 782 N.Y.S.2d 651 (App. Div. 2004). On November 23, 2004 the petitioner sought leave to appeal the denial of his motion to the Court of Appeals. (Exh. Y.) The District Attorney opposed the petitioner's leave application. (Exh. Z.) On January 27, 2005, the Court of Appeals denied his application for leave to appeal. *People v. Thigpen*, 825 N.E.2d 144 (2005).

F.       The Petitioner's Petition for a Writ of Mandamus Pursuant to
         New York Civil Practice Law and Rules ("CPLR") Article 78

On September 7, 2004, the petitioner, *pro se*, filed an affidavit in support of an order to

show cause as well as a petition, commencing a CPLR Article 78 proceeding in Dutchess County

Supreme Court.  (Exh. BB.)  The petitioner asserted that his sentence was incorrectly calculated

and needed to be recalculated by the New York Department of Corrections ("DOCS").  On

January 4, 2005, New York's Attorney General filed an answer in opposition to petitioner's

Article 78 petition on behalf of Glenn Goord, the Commissioner of the DOCS.  (Exh. CC.)  On

January 10, 2005, the petitioner filed a reply letter.  (Exh. DD.)

On March 17, 2005, the Honorable Justice Christine Sproat dismissed the petitioner's

Article 78 petition.  (Exh. EE.)  Justice Sproat determined that the respondent properly decided

that the petitioner's sentence should run consecutively to undischarged sentences on his prior

convictions.  (*Id.* at 2-3 (citing 70.25(2-a)).)

G.  State Court Petition for Writ of Habeas Corpus

On February 17, 2005, the petitioner, acting *pro se*, filed a state court petition for a writ

of habeas corpus in New York Supreme Court in Dutchess County.  (Exh. FF.)  The petitioner

argued that: (1) his grand jury waiver of immunity was defective; and (2) his indictment was

improper because the prosecutor did not allow him to give uninterrupted testimony and misled

the grand jury.  (*Id.* at 1)  On April 15, 2005, the District Attorney filed an answer in opposition

to the petition.  (Exh. GG.)

On May 11, 2005, the Honorable Justice James Pagones denied the petitioner's

application for a writ of habeas corpus.  (Exh. HH.)  The court ruled that habeas corpus was not

the correct way to raise the petitioner's complaints, which should have been brought on direct

appeal or on a § 440 motion.  (*Id.* at 2.)  The court also found that the petitioner's complaints were meritless, as the District Attorney established that the petitioner voluntarily signed a waiver of immunity and that he gave uninterrupted testimony.  (*Id.*)  The petitioner did not seek leave to appeal this decision.

H.  <u>The Petitioner's Third Motion to Set Aside the Sentence</u>

On April 26, 2005, the petitioner, acting *pro se*, filed a third motion to set aside his sentence pursuant to N.Y. Crim. Proc. Law §440.20.  (Exh. II.)  The petitioner argued that he should not have been designated as a persistent violent felony offender when sentenced because he was never readjudicated as one following the conditional grant of his first § 440.20 motion to set aside his sentence.  (*Id.* at 2)  More specifically, he argued that in order to sentence him as a persistent violent felony offender, the court would have needed to look at his previous sentencing minutes, which it did not do.  (*Id.* at 1.)  The District Attorney opposed the petitioner's motion.  (Exh. JJ.)  On June 6, 2005, Justice Kron denied the motion.  (Exh. KK.)  The court held that the motion was procedurally barred pursuant to N.Y. Crim. Proc. Law § 440.20(3) because the petitioner did not bring the issue before the court in his second motion to set aside his sentence.  (*Id.* at 2.)

Moreover, the court found no merit in the petitioner's claim because he was re-sentenced following his March 23, 2001 hearing.  (*Id.*)  The court stated that the petitioner "was re-sentenced on the same terms as his original sentence...because he failed to carry his burden of proof with respect to alleged deficiencies in his predicate convictions." (*Id.*)  If he wished to pursue the issue, the petitioner should have raised it in his second motion to set aside his sentence, but he failed to do so.  The petitioner did not seek leave to appeal.

I.  The Petitioner's Second Motion to Vacate the Judgment of Conviction

On June 2, 2005, the petitioner, acting *pro se*, filed his second motion to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10.  (Exh LL.)  The petitioner argued that: (1) the prosecutor withheld exculpatory evidence by withholding pages of minutes from the petitioner's grand jury proceedings which dealt with his waiver of immunity; (2) his waiver of immunity before the grand jury was defective; and (3) he was not under oath when he testified in front of the grand jury.  (*Id*.)  The District Attorney opposed the petitioner's motion. (Exh. MM.)

On July 27, 2005, Justice Kron denied the petitioner's motion to vacate his conviction. (Exh. NN.)  The court ruled that the petitioner's claims, which solely involved matters of record, were procedurally barred.  (*Id.* at 2 (citing N.Y. Crim. Proc. Law § 440.10(2)(c)).)  The court also noted that although the petitioner claimed that the withheld grand jury pages contained information unknown to the defense, he participated in the grand jury proceedings and should have made known any problems on the record before judgment was rendered.  (*Id.* at 2.)  The court ruled that the petitioner's claim was also barred because he had failed to raise this issue in prior attacks against his conviction.  (*Id.* at 2 (citing N.Y. Crim. Proc. Law § 440.10(3)(c)).)

In any event, the court found that the petitioner's claims lacked merit.  (*Id.* at 2.)  Aside from the petitioner's allegations, the court found no evidence that any grand jury minutes had been withheld.  (*Id.* at 2-3 (citing N.Y. Crim. Proc. Law § 440.30(4)(b), (d)).)  The court found that the petitioner's waiver of immunity was valid because it met the necessary statutory requirements.  (*Id.* at 3.)  Finally, the court found that, since grand jury minutes are neither

evidence nor were they favorable to the defendant, they were not *Brady* material, and therefore could not be the basis of a *Brady* claim.

On September 21, 2005, the petitioner sought leave to appeal the denial of his motion to the Appellate Division. (Exh. OO.) The District Attorney opposed his application for leave. (Exh. PP.) On March 21, 2006, the Appellate Division denied the petitioner's application for leave to appeal. (*See* Exh. QQ.)